**Ferma Miller NISSEN, Plaintiff-Appellee,**

v.

**Leo MILLER, Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Aug. 17, 1982.

Permission to Appeal Denied by Supreme Court Nov. 22, 1982.

Dale C. Workman, Knoxville, for defendant-appellant.

Dwight E. Tarwater, Knoxville, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

A Colorado judgment based on arrearages of child support under a Colorado divorce decree was filed in the Chancery Court for enforcement pursuant to the Uniform Enforcement of Foreign Judgments Act. T.C.A. 26–6–101, et seq. The Chancellor ordered the judgment enforced in this state and defendant has appealed.

The issues on appeal are whether a previous proceeding pursuant to the Reciprocal Enforcement of Support Act, T.C.A. 36–901, et seq. wherein the Tennessee Court entered an order of support effectively modified the original order of child support, and whether the Colorado judgment admittedly entered without any notice to defendant is entitled to full faith and credit in this jurisdiction.

The original Colorado decree provided for $200 per month child support payments. In 1977 plaintiff filed a petition for enforcement in Colorado. The Knox County Circuit Court responding to the petition ordered defendant to pay $10.00 per week as child support.

The issue of the effect of a U.R.E.S.A. support order on the original order of support was decided in *Hester v. Hester,* 59 Tenn.App. 613, 443 S.W.2d 28 (1968). In *Hester,* the parties had obtained a Georgia divorce decree which set monthly child support payments of $600 per month. The wife filed a U.R.E.S.A. petition after the husband moved to Tennessee and defaulted on payments. In the U.R.E.S.A. action, the Tennessee court required the defendant to pay support of $450 per month. Another action was begun by the wife in Tennessee to recover a deficiency in alimony and in child support under the original Georgia order. The Circuit Court denied recovery; however, on appeal, this Court reversed, and said:

> Upon first consideration we were inclined to hold that by instituting and receiving the benefit of the reciprocal support judgment, plaintiff had impliedly consented to a reduction in child support from $600.00 per month to $450.00 per month. T.C.A. 36–926, however, expressly provides that a judgment for support under the Reciprocal Enforcement statute shall not supercede "any previous order of support or separate maintenance action." The terms of the statute being directly applicable must be given effect. *Id.,* at 621, 443 S.W.2d at 32.

The majority of courts in other jurisdictions hold U.R.E.S.A. orders do not supersede prior support orders. *See e.g., Despain v. Despain,* 78 Idaho 185, 300 P.2d 500 (1956); *Howard v. Howard,* 191 So.2d 528 (Miss.1966); *Campbell v. Jenne,* 172 Mont. 219, 563 P.2d 574 (1977); *Foster v. Marshman,* 96 Nev. 475, 611 P.2d 197 (1980); *Oglesby v. Oglesby,* 29 Utah 2d 491, 510 P.2d 1106 (1973).

As to whether a court may increase the amount of support in a U.R.E.S.A. proceeding, courts are divided. *Compare State ex rel. Nebraska v. Brooks,* 34 Or.App. 975, 580 P.2d 206 (1978) (may not increase) with *Abb v. Crossfield,* 23 Md.App. 232, 326 A.2d 234 (1974) (court may increase support payments). We have adopted the rule that support payments may be increased in a U.R.E.S.A. Petition. In *Koehler v. Koehler,* 559 S.W.2d 944 (Tenn.App.1977), the Arizona court granting the divorce established child support payments of $50 per month. Subsequently, the wife moved to New York and filed a U.R.E.S.A. petition there. The New York court certified to Tennessee

where the husband was living, having determined that the amount of support needed was $75 per month. The trial court ordered payments of $75 per month. This Court held the trial court had jurisdiction to increase the payments.

In *Koehler*, the trial court also rendered judgment against the husband for $2,100 arrearages on the Arizona decree. The *Koehler* court held that judgment for the arrearage was within the jurisdiction of the court.

As to the right to render judgment for the arrearage of $2,100.00, while there was not a specific prayer in the petition for a judgment in the Tennessee Court for the arrearage, the allegation was made that such arrearage did exist and the respondent specifically admitted that such arrearage did exist and stated that the amount of the arrearage was $2,100.00 but insisted that he was entitled to a credit of $325.00 for having paid $25.00 a month over and above the amount required by the Arizona decree and we are inclined to agree that he is entitled to a credit of $325.00 as insisted by him. However, this will not affect the $75.00 a month payments under the Tennessee decree and he will not be entitled to additional credits on the arrearage by paying the $75.00 a month as ordered. *Id.*, at 950.

Defendant argues in *Koehler* the Tennessee Court had authority "to modify the amounts of support currently due after its hearing so as to eliminate additional arrearages from the original amount." However, there is no indication the $2,100 represented a reduction in the amount in arrears. Defendant testified he owed $2,100, 559 S.W.2d at 948, and the judgment was entered in that amount. In *Koehler*, the Court left intact the Arizona judgment, in accordance with the Act. Defendant is not relieved of liability on the original divorce decree by virtue of the County Circuit Court order.

On the remaining issue, in December 1980 plaintiff filed a motion to reduce to judgment the $34,800 arrearage under the original Colorado decree. No notice was given to the Defendant and judgment was entered. In order to utilize the enforcement procedures of the Uniform Enforcement of Judgments Act, the judgment must be one which is "entitled to full faith and credit." T.C.A. 26–6–103.

The Chancellor ruled the Colorado judgment must be enforced if it is not subject to modification and therefore a final judgment. See *Schmidt v. Schmidt*, 493 S.W.2d 720 (Tenn.1973); *Rasnic v. Wynn*, 625 S.W.2d 278 (Tenn.App.1981).

In ordering the judgment enforced the Chancellor relied on *Burke v. Burke*, 127 Colo. 257, 255 P.2d 740 (1953) which held that each installment of support becomes a final money judgment as it becomes due and *Jenner v. Jenner*, 138 Colo. 149, 330 P.2d 544 (1958), which held notice to defendant was not necessary to reduce past due installments to one judgment. However, Colorado law recognizes certain defenses to past due child support obligations.

The Court in *In Re Marriage of Franklin*, 634 P.2d 1032 (Colo.App.1981), held that the lower court erred in failing to allow the husband to raise equitable defenses in the wife's action to reduce child support arrearages to judgment. The husband had successfully defended a contempt action on the ground that the children were either emancipated or were living with him during the time that the arrearages were accumulating; however, in the action for money judgment, the trial court refused to allow this defense on the basis of *Jenner*. The Colorado Court, quoting from *Partridge v. Partridge*, 43 Colo.App. 253, 601 P.2d 662 (1979), stated the proper rule is that past due installments are matured obligations which the court has no power to cancel "unless there exist adequate grounds for equitable relief from such obligation." *Id.*, at 1034. *Accord: Carey v. Carey*, 29 Colo. App. 328, 486 P.2d 38 (1971); *Griffith v. Griffith*, 152 Colo. 292, 381 P.2d 455 (1963).

Accordingly, we conclude the failure to give defendant notice of the Colorado proceeding denied him the right to be heard

and raise equitable defenses he may have, and as has been aptly observed, what ever else the phrase due process may mean it includes the right to be heard before one's property rights are adversely affected.

In reaching this result we rely on *Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946), which is factually similar to the instant case. In *Griffin,* an order for alimony was issued in New York in 1926 pursuant to a 1924 interlocutory divorce decree. In 1936, both parties participated in hearings in a New York contempt proceeding for arrearages accumulated through October 1935. The court entered a judgment which was never paid. In 1938, the wife again attempted to enforce her right to alimony payments by a motion to enter money judgment for the amount in arrears. The court entered judgment on an *ex parte* basis as was allowed by New York civil practice at that time. The wife then sought to enforce the judgment in the District of Columbia. The husband defended the action on notice grounds; however, the court granted summary judgment in favor of the wife and the Court of Appeals affirmed.

The United States Supreme Court held as to amounts due after the 1936 hearing, the judgment was obtained without an opportunity to be heard and the judgment should not be extended full faith and credit. The Court reasoned:

> Concededly, the 1938 judgment was entered without actual notice to or appearance by petitioner, and without any form of service of process calculated to give him notice of the proceedings ... Because of the omission, and to the extent that petitioner was thus deprived of an opportunity to raise defenses otherwise open to him under the law of New York against the docketing of judgment for accrued alimony, there was a want of judicial due process, and hence want of that jurisdiction over the person of petitioner prerequisite to the rendition of a judgment *in personam* against him. (327 U.S. at 228, 66 S.Ct. at 560)

The Court concluded: "A judgment obtained in violation of procedural due process is not entitled to full faith and credit when sued upon in another jurisdiction."

We reverse the Chancery Court judgment and remand for the entry of an order of dismissal at plaintiff's costs.

PARROTT, P.J., and SANDERS, J., concur.